**FANTASIA RESTAURANT & LOUNGE, INC. & David Lui, Appellants,**

**v.**

**NEW CASTLE COUNTY BOARD OF ADJUSTMENT, Appellee.**

Nos. 97A–03–017–HLA, 97A–09–012–HLA.

Superior Court of Delaware, New Castle County.

Submitted: Sept. 1, 1998.

Decided: Nov. 20, 1998.

Upon Appeal from the New Castle Board of Adjustment Affirmed.

Darrell J. Baker, Wilmington, DE, for Appellant.

John E. Tracey, Wilmington, DE, for Appellee New Castle County Board of Adjustment.

ALFORD, J.

## I. INTRODUCTION

This is an appeal by Fantasia Restaurant and Lounge, Inc. and David Lui (collectively "Appellant") from two decisions of the New Castle County Board of Adjustment ("Board") denying Appellant zoning certification for the establishment of an adult entertainment center. The Court consolidated the two appeals on October 31, 1997.

## II. FACTS

Appellant David Lui, sole shareholder of Fantasia Restaurant & Lounge, Inc., sought to open an adult entertainment establishment at 1031 South Market Street, New Castle, Delaware, Tax Parcel 10–001.00–012. In order to operate such a facility, an applicant must establish that the location of the proposed adult entertainment establishment complies with all local laws and ordinances.[1] In New Castle County, this requires compliance with § 40–133(a)(13) of the County's zoning code.[2]

On July 30, 1996, Appellant submitted his request to the New Castle County Department of Planning ("Department") for certification that the property complied with the zoning statute. In his application, Appellant affirmatively represented that the location of his proposed adult entertainment center would be "in excess" of 2,800 feet from "any property currently improved with a school, church, or other place or worship."[3] A survey prepared by A.E.S. Surveyors stated that the proposed center was situated more than 2,800 feet from the Church of the Living Word, Inc., located on 815 South Heald Street. No other church was referenced on the survey.

On August 12, 1996, the Department granted Appellant zoning certification for a portion of his property. When granting the certification, the Department stated that:

> [P]ortions of Tax Parcel 10–001.00–012 currently comply with Zoning Code requirements for an adult entertainment center as of the date of this letter. Because this proposed adult entertainment center has not been established, however, this certification may become null and void due to changing conditions in the future.[4]

Eleven days later, on August 23, 1996, the Department revoked its August 12, 1996 certification. Explaining the rescission, the Department informed Appellant that circumstances surrounding his application had changed. The Department's letter stated that on August 22, 1996, the Department was informed of the existence of another church located merely several hundred feet from the proposed establishment. The Department informed Appellant that the Saint James New Holy Prayer Temple of Love Pentecostal Church ("St. James Temple,") located on 1018 S. Market Street had been in existence since 1992. Based on a finding by Captain Raymond Hancock of the Delaware State Police, Special Investigations Section, that St. James Temple was indeed a "church," and a finding that this church was well within the 2,800 feet of the proposed establish-

---

**1.** 24 DEL. C. § 1610(a).

**2.** § 40–133(a)(13) states in relevant part:
Massage parlors which provide services on and/or off premises, adult bookstores and adult entertainment centers shall be permitted as follows:
(a) No such use shall be permitted within 500 feet of any property containing a dwelling or other residence located within any residentially zoned district.

(b) No such use shall be permitted within 2,800 feet of a school, church or other place of worship.
(c) No such use shall be permitted within 1,500 feet of each other.

**3.** *See* NEW CASTLE COUNTY APPLICATION FOR ZONING CERT. (hereinafter "ZONING APPLICATION,") question # 7.

**4.** *See* DEP'T DEC. OF AUG. 12, 1996.

ment, the Department rescinded the certification it granted on August 12, 1996.

On September 3, 1996, Appellant filed a supplemental application with the Department and in his supporting letter, Appellant contended that the Department's rescission of the August 12, 1996 certification was in error because St. James Temple was not a "church." Appellant also informed the Department that he recently purchased the lease of St. James Temple. On September 24, 1996, Appellant filed another application along with an affidavit from the pastor of St. James Temple, Bishop Woodrow Parson. Bishop Parson's affidavit stated that St. James Temple "has ceased all operations" as a church at 1018 S. Market Street, and that the church had no future intentions of using the site for any religious purposes. The affidavit also indicated that the balance of the church's lease had been assigned to a one Edward Falkowski. On October 4, 1996, Appellant appealed the Department's rescission to the Board of Adjustment. A public hearing was scheduled for December 12, 1996.

On December 6, 1996, the Department ruled on Appellant's second request for zoning certification. In denying the application, the Department informed Appellant that the Church of the Living Word was, in fact, within 2,800 feet of the proposed establishment. The Department informed Appellant that the correct method of measuring the distance between the proposed adult entertainment establishment and the Church of the Living Word is by using a straight line measurement. The Department's letter further stated that the straight line measurement:

> shall be measured from the nearest building setback line or the building itself of the adult entertainment use, whichever is closer, to the property line of the church, school, residence or other such property.[5]

Referring to the Location Survey Plan submitted by Appellant with his original application, the Department stated that using the straight line, property-to-property measurement, the Church of the Living Word was within 2,800 feet of the building setback lines of Appellant's property. Appellant appealed this ruling to the Board on January 2, 1997, and a hearing on this issue was scheduled for June 12, 1997.

On December 12, 1996, a hearing was held to consider Appellant's first appeal which dealt exclusively with the Department's revocation of the initial grant of certification eleven days after its issuance. At the hearing, Appellant argued that (1) St. James Temple never lawfully existed as a church; (2) even if St. James were a legally existing church, it ceased to exist after September 8, 1996; (3) the Department's rescission of its original certification violates his constitutional rights; and (4) the straight line property-to-property measurement is not contemplated by § 40–133(a)(13)(b).

On February 28, 1997, the Board issued a decision affirming the Department's revocation of the zoning certification. In rejecting Appellant's arguments, the Board determined that St. James Temple was an existing church at the time the zoning certification was issued, and that the rescission of the zoning certification did not violate Appellant's constitutional rights. The Board determined Appellant's due process arguments meritless because, in its view, Appellant had not detrimentally relied on the original certification. The Board did not consider Appellant's argument regarding the method of measuring the 2,800 foot separation between the proposed adult use and the Church of the Living Word.

On March 26, 1997, Appellant filed a timely appeal to this Court. Briefing on this issue was delayed, however, pending the receipt by this Court of a second appeal from an adverse Board decision con-

---

5. *See* DEP'T DEC. OF DEC. 6, 1996.

cerning the same property and proposed use by Appellant.

On June 12, 1997, a second hearing was held on the issue of the legal standard for determining the 2,800 foot distance between the protected use and the proposed adult use. At the hearing, Appellant argued that § 40–133(a)(13)(a)(b) should be read to mandate a building structure-to-building structure measurement, i.e., from the building containing the adult use to the building containing the protected use, or in the alternative, from the existing church structure to the building setback line of the adult use. Appellant stated that using this method, the proposed adult center would be in excess of 2,800 feet from the Church of the Living Word. Appellant also argued that the Department's rescission of the August 12, 1996 certification was an attempt to block the operation of an adult entertainment facility at the proposed location, and that the Board should impose a "consistency of determination" upon the Department.

The County, on the other hand, while concurring with Appellant that there is no definitive statutory guidance for measuring the 2,800 foot distance, argued that the only reasonable measure of distance is from the property line of the proposed adult use to the property line of the protected use, or in the alternative, from the proposed building setback line on Appellant's premises to the most proximate boundary of the protected use. The County also argued that the Department's rescission of the August 12, 1996 certification eleven days after its issuance was an attempt by the Department to correct an error, and that Appellant's constitutional rights were not violated because he did not have a vested right from the initial grant of certification.

On August 29, 1997, the Board issued a decision denying the appeal. Affirming the Department's second denial of zoning certification, the Board determined that the correct method of measurement is from the property line of the proposed adult use to the property line of the protected use. The Board also determined that the terms "place of worship" in the Zoning Code describe an entire parcel of land as opposed to a building or a structure. On September 26, 1997, Appellant filed a timely appeal to this Court. By order of this Court on October 31, 1997, the March 26, and September 26, 1997 appeals were consolidated.

## III. STANDARD AND SCOPE OF REVIEW

The Court is satisfied that Appellant has standing to challenge the Board's decision. 9 DEL. C. § 1353(a) reads in pertinent part, "[a]ny person aggrieved by any decision of the Board of Adjustment ... may present to the Superior Court a petition ... alleging that such decision is illegal." This appeal involves statutory interpretation, which is a question of law.[6] The Superior Court, in reviewing decisions of administrative boards, has authority to review questions of law.[7]

The Court's scope of review on appeal from a Board of Adjustment decision is limited to correcting errors of law and determining whether or not substantial evidence exists on the record to support the Board's finding of fact and conclusions of law.[8] Substantial evidence is evidence

from which an agency fairly and reasonably could reach the conclusion it did .... [i]f the decision is supported by substantial evidence, the Court must sustain

---

6. *See E.I. duPont de Nemours & Co. v. Shell Oil Co.,* Del.Supr., 498 A.2d 1108, 1113 (1985).

7. *See State ex. rel. Dep't of Labor v. Unemployment Ins. Appeal Bd.,* Del.Super., 297 A.2d 412 (1972).

8. *See Janaman v. New Castle County Bd. of Adjustment,* Del.Super., 364 A.2d 1241 (1976); *see also Mellow v. Board of Adjustment,* Del.Super., 565 A.2d 947, 954 (1988), *aff'd,* 236 N.J.Super. 227, 565 A.2d 422 (1989).

the decision of the Board, even though it would have decided otherwise had it come before it in the first instance. This is because it is for the agency, and not the court, to weigh evidence and resolve conflicting testimony and issues of credibility.[9]

■ If the Board's decision is fairly debatable, this Court will defer to the discretion of the Board.[10] This Court does not weigh the evidence, determine questions of credibility or make its own factual findings.[11] Moreover, "our courts in their wisdom have determined that this Court does not have the option to remand a case to the Board of Adjustment." [12]

## IV. ISSUES ON APPEAL

Appellant makes several arguments. Appellant contends first that the Department of Planing violated his constitutional rights when it *sua sponte* revoked the August 12, 1996 zoning certification. Appellant's second contention is that St. James Temple was not a "church" within the meaning of the Zoning Code and cannot be considered for purposes of the statute. Lastly, Appellant argues that § 40–133(a)(13)(b) should be read to mandate a building structure-to-building structure measurement, i.e., from the building containing the adult use to the building containing the protected use.

The Court will not consider Appellant's second argument because the Court finds that the 2,800 foot separation as required by § 40–133(a)(13)(b) should be measured from the building containing the adult use to the property containing the protected use. Therefore, a finding by this Court that the Church of the Living Word is within the protection afforded by the Zon-

ing Code renders irrelevant the determination of whether St. James Temple was a "church."

## V. DISCUSSION

■ The Court first considers Appellant's due process argument. Appellant argues that the Department violated his due process rights when it *sua sponte* revoked its August 12, 1996 certification on August 23, 1996 without providing him notice and an opportunity to be heard. The Court finds this argument meritless.

When granting the certification on August 12, 1996, the Department's letter informed Appellant that the proposed property:

> currently compl[ies] with Zoning Code requirements for an adult entertainment center as of the date of this letter. Because this proposed adult entertainment center has not been established, however, this certification may become null and void due to changing conditions in the future.[13]

Explaining the August 23, 1996 revocation, the Department's letter stated that on August 22, 1996, ten days after the certification, the Department was informed of the existence of another church and that this church was well within the 2,800 feet of the proposed establishment. It is clear that this was a changed condition. The Department's August 12, 1996 letter indicated that the certification would become null and void if circumstances surrounding the granting of the application were to change. The Court finds that the Department's August 23, 1996 letter, sent only eleven days after the original certification, was a correction of error and a prompt notification regarding the changed circum-

---

9. *Mellow,* 565 A.2d at 947.

10. *See Mettler v. Board of Adjustment,* Del.Super., C.A. No. 91A–02–3–1–AP, Gebelein, J., 1991 WL 190488 (Aug. 21, 1991).

11. *See Johnson v. Chrysler Corp.,* Del.Supr., 213 A.2d 64, 66–67 (1965).

12. *See Petrucelli v. New Castle County Bd. of Adjustment,* Del.Super., C.A.. No. 97A–02–009, Quillen, J., 1997 WL 817891 (Dec. 2, 1997) (Let. Op. and Order).

13. *See* DEP'T DEC. OF AUG. 12, 1996. (Emphasis added).

stances. Once the Department discovered that the original zoning certification letter was issued based on mistaken factual determinations, it acted swiftly to correct the error. Absent a showing by Appellant that between August 12, 1996, and August 23, 1996, he made a substantial change in position such as obtaining a building permit or incurring obligations, Appellant cannot argue that he acquired vested rights.[14]

Appellant argues that the Department's revocation would not have been allowed under 29 DEL. C. § 10131, the Delaware Administrative Procedures Act ("A.P.A."). The Court finds Appellant's analogy to the A.P.A. meritless. Pursuant to § 10102(1) of the Act, the New Castle County and the Department of Planning are entities specifically excluded from the A.P.A. An applicant in Appellant's position has, instead, an administrative remedy pursuant to Title 9, § 1352(a) of the Delaware Code: he is entitled to a direct appeal to the Board of Adjustment. The Court therefore finds that the Board's February 28, 1997 decision, in so far as it determined that the Department's August 23, 1996 rescission did not violate Appellant's constitutional rights is supported by substantial evidence.

The Court turns to Appellant's statutory construction argument. The issue is whether the Board's decision filed on August 29, 1997 is supported by substantial evidence. The parties are not in dispute that § 40–133(a)(13)(b) does not expressly mandate a specific method of measurement to determine the requisite 2,800 foot separation between an adult entertainment establishment and a protected use, such as a school, church or place of worship.

Appellant argues that § 40–133(a)(13)(b) should be read in conjunction with § 40–133(a)(13)(a), which does mandate a specific method of measurement. He contends that because the word "property" is mentioned in 133(a)(13)(a) and omitted from 133(a)(13)(b), the latter ordinance must be construed to include only the actual structure and not the surrounding property of a school, church, or place of worship. The doctrine of *inclusio unius est exclusio alterius,*[15] Appellant contends, should guide the Court when considering his statutory construction argument.

In order to resolve this issue, the Court must examine the statutes involved. The New Castle County Zoning Code defines an adult entertainment center as:

> an enclosed building used for presenting material and/or conduct distinguished or characterized by an emphasis on matter depicting, describing or relating to specified sexual activities or specified anatomical areas ... for observation by patrons therein.[16]

■ Under the definition provided by the zoning code, there is no question that the Council contemplated adult entertainment establishments to include building structures only. Therefore, the standard of measurement for purposes of 133(a)(13)(a)(b) & (c) is to begin (or end) measuring the statutorily prescribed distance from (or to) the building containing the adult use.[17] Under the above referenced definition, in the case of

---

**14.** *See Shellburne, Inc. v. Roberts,* Del.Supr., 224 A.2d 250, 254 (1966) (holding, the acquisition of vested rights requires the issuance of a permit and some substantial expenditure, obligation or change in relation to the land).

**15.** The doctrine states that where a law "expressly describes [a] particular situation to which it [applies], an irrefutable inference must be drawn that what is omitted or excluded was intended to be omitted or excluded." *See* BLACK'S LAW DICTIONARY 763 (6th ed.1990).

**16.** *See* NEW CASTLE COUNTY CODE § 40–1. (Emphasis added). The Code defines "building" as "any structure designed to be used as a place of occupancy, storage or shelter." *Id.*

**17.** The standard is different for massage parlors. § 40–133(a)(13) states that "[m]assage parlors which provide services on and/or off premises, adult bookstores and adult entertainment centers...." (Emphasis added). § 40–1 defines "premises" as "any lot, area or tract of land, whether used in connection with a building or not." *Id.*

133(a)(13)(a), the requisite 500 foot separation is to be determined by measuring the distance between the building containing the adult use to "any property containing a dwelling or other residence located within any residentially zoned district." 133(a)(13)(c) is equally clear: a building-to-building measurement will be used to determine the requisite 1,500 foot separation between two adult entertainment establishments.

 It is well settled in Delaware that when applying a statute, the fundamental rule is to:

ascertain and give effect to the intent of the legislature. If the statute as a whole is unambiguous, there is no reasonable doubt as to the meaning of the words used ... the Court's role is then limited to an application of the literal meaning of the words. However, it is undisputed that when a statute is ambiguous and its meaning may not be clearly ascertained, the Court must rely upon its methods of statutory interpretation and construction to arrive at what the legislature means. If the statute is reasonably susceptible of different conclusions or interpretations, it is ambiguous. Ambiguity may arise from the fact that giving a literal interpretation to words of the statute would lead to such unreasonable or absurd consequences as to compel a conviction that they could not have been intended by the legislature.[18]

 As explained in *Coastal Barge Corp.*, when interpreting a statute, "each part or section of that statute should be read in light of every other part or section to produce a harmonious whole."[19] Moreover, the "import of any word or phrase is to be gleaned from the context and statutes in pari materia...."[20] The Court is in agreement with Appellant that 133(a)(13)(b) must be read in conjunction with 133(a)(13)(a). While the question of whether or not 133(a)(13)(a) mandates a standard of measurement is not before the Court, the terms in that statute stating that "no [adult] use shall be permitted within 500 feet of any property containing a dwelling ..." provide valuable guidance in construing the measurement standard of 133(a)(13)(b).

 The term "property" in 133(a)(13)(a) refers specifically to the protected use. As noted above, while 133(a)(13)(c) does not provide a specific standard of measurement, the definition of "adult entertainment center" establishes a standard for measurement.[21] Because the terms "school," "church," or "place of worship" are not defined in the zoning code, and because 133(a)(13)(b) does not include the term "property," when viewed by itself, the language in the statute is ambiguous and open to different interpretations. Accordingly, the Court finds the statute ambiguous and consequently examines the County Council's intent in enacting this statute.

The New Castle County Zoning Code states that in its interpretation and application, the statute "shall be held to the minimum requirements adopted for the

18. See *Stong v. Voshell,* Del.Super., Civ.A. No. 94A–04–007, Lee, J., 1995 WL 156260 (Feb. 27, 1995) (Mem.Op.) (citing *Coastal Barge Corp. v. Coastal Zone Indus. Control Bd.,* Del. Supr., 492 A.2d 1242, 1246 (1985) (citations omitted)).

19. See *Coastal Barge Corp.* 492 A.2d at 1245 (citing *Philbrook v. Glodgett,* 421 U.S. 707, 95 S.Ct. 1893, 44 L.Ed.2d 525 (1975); *Mastro Plastics Corp. v. National Labor Rel. Bd.,* 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956); *Murphy v. Board of Pension Trustees,* Del. Supr., 442 A.2d 950 (1982)); *see also Stiftel v.*

*Malarkey,* Del. Ch., 378 A.2d 133, 138 (1977) *rev'd,* sub nom., 384 A.2d 9 (1977) (stating that in addition to interpreting a statute, it the duty of a court "to give the words of a statute a reasonable and sensible meaning and to take into consideration the meaning naturally attaching to them from the context and to adopt that sense in the word which best harmonizes therewith." *Id.*).

20. See *C & T Assoc. v. Gov't of New Castle,* Del. Ch., 408 A.2d 27, 29 (1979).

21. See *supra* note 16 and accompanying text.

promotion of the public health, safety, morals, convenience, order, prosperity or general welfare." [22] Zoning ordinances placing such restrictions have been recognized by state and federal courts. The United States Supreme Court and Delaware courts have recognized that zoning restrictions that limit where an adult entertainment establishment may operate are "content neutral," and are merely time, place, and manner restrictions. [23] This is so because such zoning is concerned with the effects of the operation of the establishment on the surrounding area, and is not concerned with restricting the message itself. [24]

A review of cases where the method of measurement between a protected use and an adult entertainment establishment is contested and where the zoning ordinance is silent as to the method of measurement shows that the courts have determined that it is rational, reasonable, and appropriate to measure this distance from the property line of the adult use to the property line of protected uses such as residential areas and schools. [25]

The *Amico* [26] decision is instructive. In finding the 2,800 foot separation constitutional, the court found that:

Many children living within half a mile of schools and churches walk to school and Sunday School, often unaccompanied by their parents. Even those children who are bussed or driven to school or church risk exposure to the adverse effects of an adult entertainment center if such uses are permitted within half a mile of schools and churches since many schools and Sunday Schools have recess or study periods during which children are unsupervised. [27]

It is clear that when drafting the zoning ordinance, the New Castle Council decided to create adequate geographic delineations between adult entertainment centers and schools, churches, and places of religious worship. The same reasoning applied in *Texas National Theaters* and *Davidson* should also guide this Court's decision. [28] Because members of a church may receive instruction or congregate on a church premises, it is the Court's belief that the New Castle County Council intended to include the property of a church within the

**22.** *See* NEW CASTLE COUNTY CODE § 40–2.

**23.** *See City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (citing *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976)); *see also United Video Concepts, Inc., v. City of Dover,* Del.Super., C.A. No. 93A–10–004, at *2, Ridgely, P.J., 1994 WL 682321 (Oct. 31, 1994) (Mem.Op.); *see generally, Amico v. New Castle County,* D.Del., 101 F.R.D. 472, 483 (1984), *aff'd,* 3d Cir., 770 F.2d 1066 (1985).

**24.** *United Video Concepts, Inc.,* C.A. No. 93A–10–004, at *2, 1994 WL 682321 (citing City of Renton, 475 U.S. at 41, 106 S.Ct. 925). The *United Video Concepts* Court held that the zoning restrictions placed on a video store selling sexually oriented merchandise were not unconstitutionally overbroad nor vague, and were narrowly tailored to serve a substantial government interest. *Id.* at *4, 1994 WL 682321.

**25.** *See, e.g., Cupid's Video Boutique, Inc. v. Roth,* 203 A.D.2d 70, 610 N.Y.S.2d 24, 25 (1994) (affirming zoning board's decision to adopt a property to property method of measurement to determine the statutorily prescribed 500 foot separation between an adult entertainment establishment and a residential area); *Texas Nat'l Theatres, Inc. v. City of Albuquerque,* 97 N.M. 282, 639 P.2d 569, 573 (1982) (finding zoning enforcement officer's decision to use a property-to-property measurement standard reasonable and that it would be contrary to the intent of the statute to limit the measurement to the structure of the dwelling house when the entire lot constitutes the use); *Davidson v. Lovett,* 242 Ga. 375, 249 S.E.2d 61 (1978) (finding that a "school" is composed of instructors and students, and may be conducted indoors or outdoors and that "students may receive instructions and congregate on the school premises it is the legislative intent" that liquor not be sold within 100 yards of the school).

**26.** 101 F.R.D. 472.

**27.** *Id.* at 490 n. 25.

**28.** *See* supra note 25 and accompanying text.

specific protections afforded by 133(a)(13)(b). The same logic would apply to schools. The Court therefore concludes that the County Council intended "for distances to be measured from the nearest building line of the adult use to the nearest property line of the protected property."[29]

The Court further concludes that to the extent that the omission of the word "property" in 133(a)(13)(b) leaves room for confusion, the problem has been procedurally and adequately remedied by the Department's application form. Question (7) of the Zoning Application requires an applicant to state the "[d]istance in feet from any property currently improved with a school, church, or other place of worship," and to measure this distance "from nearest part of structure to nearest school, church, etc. property line."[30]

The Court finds that when viewed in the context of various statutory construction precepts, case law, and administrative procedures, there is no question that § 40–133(a)(13)(b) contemplates that the standard of measurement to be used when determining the requisite 2,800 feet separation between the adult use and the protected use is by measuring the distance between the proposed building structure, or the nearest building setback line of the adult use, and the premises of the protected use. To read § 40–133(a)(13)(b) as mandating a building to building measurement because of the absence of the term "property" would "countermand the clear legislative intent ... to allow municipalities to adopt more stringent restrictions on the location of adult entertainment establishments."[31]

## VI. CONCLUSION

For the reasons set forth hereinabove, the Court finds that the 2,800 foot separation as required by § 40–133(a)(13)(b) should be determined by a straight line measurement from the nearest building setback line of the proposed establishment, or, from the building containing the adult use, to the property line containing a school, church, or place of worship.

It cannot be said that the Board's decision to deny Appellant a zoning certification was irrational, unreasonable, or inconsistent with the legitimate purposes of the ordinance. The Board's findings were supported by substantial evidence. The Board of Adjustment's February 28, 1997 decision, in so far as it determined that the Department's August 23, 1996 rescission did not violate Appellant's constitutional rights is AFFIRMED. The Board's August 29, 1997 decision to deny Appellant's zoning application is also AFFIRMED.

IT IS SO ORDERED.

**29.** *Id.* at 492 n. 28.

**30.** *See* ZONING APPLICATION. (Emphasis added).

**31.** *See Steinberg v. Frawley,* D. Del., 633 F.Supp. 548, 557 (1986).