**Jeffrey LUI, David Lui and Fantasia Restaurant & Lounge Inc., a corporation of the State of Delaware, Plaintiffs,**

v.

**COMMISSION ON ADULT ENTERTAINMENT ESTABLISHMENTS OF THE STATE OF DELAWARE, an entity within the State of Delaware Department of Administrative Services, Division of Business & Occupation Recreation, and M. Jane Brady, in her capacity as Attorney General of the State of Delaware, the State of Delaware, and New Castle County, a political subdivision of the State of Delaware, Defendants.**

No. CIV.A.02–177–KAJ.

United States District Court,
D. Delaware.

Jan. 31, 2003.

Darrell J. Baker, Esquire, Heiman, Aber, Goldlust & Baker, Wilmington, DE, Stephen F. Dryden, Esquire, Berkowitz, Schagrin, Cooper & Dryden, Wilmington, DE, for plaintiffs.

Thomas H. Ellis, Esquire, Department of Justice, Wilmington, DE, for State defendants.

Mary A. Jacobson, Esquire, New Castle County Law Dept., New Castle, DE, for New Castle County.

## MEMORANDUM OPINION

JORDAN, District Judge.

Plaintiffs Jeffrey Lui, David Lui, and Fantasia Restaurant & Lounge, Inc. ("Fantasia") filed this action under 42 U.S.C. § 1983, claiming that the defendants, the State of Delaware, the Attorney General of Delaware, Delaware's Commission on Adult Entertainment Establishments (collectively the "State Defendants"), and New Castle County, Delaware (the "County"), have violated their rights under the First and Fourteenth Amendments to the United States Constitution by refusing to issue the neces-

sary permits for plaintiffs to feature live, nude dancers at the restaurant and bar plaintiffs operate in the County and by prosecuting them for illegally operating an adult entertainment establishment. (Docket Item ["D.I."] 8 at ¶¶ 29, 37, 39–43, 45.) This case is only the latest in a long series of maneuvers in which the plaintiffs have engaged to gain permission to operate an adult entertainment establishment.

Presently before the Court are the following motions: plaintiffs' Motion for Partial Summary Judgment on Liability or, Alternatively, for Preliminary Injunction (D.I.13), the County's Cross–Motion for Summary Judgment (D.I.22), the County's Motion to Dismiss (D.I.24), and the State Defendant's Motion to Dismiss (D.I.29).[1] Because the plaintiffs are defendants in an on-going State criminal prosecution involving the issues which they also seek to litigate in this case, the Court, pursuant to *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), will abstain from exercising its jurisdiction and will dismiss without prejudice the plaintiffs' claims for equitable relief. Plaintiffs' claim for monetary damages, fees, and costs against the State Defendants will be dismissed with prejudice, since such claims are barred by the Eleventh Amendment. Summary judgment for the County will be entered against plaintiffs on their claim for monetary damages, fees, and costs in the first count of their First Amended Complaint (D.I.8) (the "Amended Complaint"), since the County cannot be liable for enforcing a State-mandated policy of restricting the location of adult entertainment establishments. The remaining claim that plaintiffs have made against the County, which is set forth in the second count of their Amended Complaint, will be stayed pending the resolution of the State's prosecution of the plaintiffs.

## I. *Background*

David Lui ("Lui") is the sole shareholder of Fantasia. (D.I. 16 at ¶ 3.) His son Jeffrey

1. This action was originally assigned within this Court to the Honorable Roderick R. McKelvie. (D.I.2.) Judge McKelvie retired from the Court in 2002 and the case was referred to Magistrate Judge Mary Pat Thynge. (*See* D.I. 11.) Oral argument on the pending motions was held before Judge Thynge on October 17, 2002, (D.I.49) and November 8, 2002 (D.I.55). The case was reassigned to the undersigned on January 6, 2003 (D.I.57).

is the General Manager of the business. (*Id.*) Since at least July, 1996, Lui has sought certification from the County that the property where Fantasia now operates, located at 1031 South Market Street in New Castle, Delaware, complies with the County's zoning restrictions on adult entertainment establishments. (D.I. 8 at ¶ 14.) Such a certification is a prerequisite for Fantasia's obtaining a State permit to offer adult entertainment. (*See id.* ¶ 15; D.I. 16 at ¶ 7.)

The New Castle County Department of Planning (the "Department") reviewed Lui's and Fantasia's request and ultimately rejected it. (*Id.*) That action by the Department was affirmed by the New Castle County Board of Adjustment, whose decision was in turn affirmed by the Superior Court of Delaware and the Delaware Supreme Court. *See Fantasia Restaurant & Lounge, Inc. v. New Castle County Board of Adjustment,* 735 A.2d 424 (Del.Super.1998), *aff'd,* 734 A.2d 641 (Del.1999). The basis of the Department's denial was the failure of Lui and Fantasia to comply with a requirement in the County code that any adult entertainment establishment be located beyond a 2,800 foot radius of any parcel of land containing a school, church, or other place of worship.[2] (D.I. 8 at ¶ 14; D.I. 16 at ¶¶ 7-8.) *See Fantasia, supra,* 735 A.2d at 426-28. The 2,800 foot distance restriction is both a requirement of the State's statute governing permits for adult entertainment establishments, 24 Del. C. § 1610(c) ("No new adult entertainment establishment ... shall operate ... within 2,800 feet from a church or school."), and a requirement that the State affirmatively demands the County also recognize. *See* 24 Del. C. § 1610(d) ("Notwithstanding any provision of law to the contrary, no municipal corporation or county may adopt any ordinance or charter amendment with distance restrictions less than those provided in this section.").

The plaintiffs nevertheless continued their preparations to open and operate Fantasia, while assuring government officials that adult entertainment would not be offered at the proposed site. When they sought approval from the County for a land development plan, however, plaintiffs' submissions gave County officials concern that plaintiffs still planned to operate Fantasia as an adult entertainment establishment, in derogation of the laws and regulations forbidding that use of the property. (*See* D.I. 26 at B–13.) On October 2, 1998, an Assistant County Attorney wrote to counsel for Lui about the proposed Fantasia land use development project, stating that, "[d]espite your client's assurances that he does not intend to operate an adult entertainment center in the building, and plans only to operate a restaurant, the submitted plan clearly indicates otherwise." (*Id.*) The County's attorney went on to note that the County was concerned that Lui, "may claim some type of undue hardship by maintaining that we allowed the building to proceed when it was obvious that it was to serve as an adult entertainment center." (*Id.*) Accordingly, the County demanded, and Lui executed, an affidavit categorically denying any intention to open or operate an "adult entertainment establishment," as that term is defined by Delaware law, "absent zoning certification from the New Castle County Department of Land Use and an adult entertainment license from the State of Delaware." (*Id.* at B–15.)

Having obtained development permits by sworn assurances to County officials, Lui next turned to the state agency responsible for liquor control. In February of 2000, counsel for Lui and Fantasia sent a letter to Delaware's Alcohol Beverage Control Commission, representing that "Mr. Lui is no longer pursuing an adult entertainment licence and has so notified all of his neighbors." (D.I. 30 at Ex. 1.) Instead, the letter said, Fantasia would offer entertainment

---

**2.** According to the opinion of the Superior Court, Lui and Fantasia had made an affirmative representation to the Department that Fantasia's proposed location "would be 'in excess' of 2,800 feet from 'any property currently improved with a school, church, or other place of worship.'" *Fantasia, supra,* 735 A.2d at 426. That representation turned out to be inaccurate. The difference in opinion on the proper method of calculating the distance between the proposed adult use and a nearby church property was at the center of Fantasia's suit in the Superior Court. *See id., passim.* The plaintiffs now concede that Fantasia is, in fact, within 2,800 feet of a church. (*See* D.I. 8 at ¶ 35.)

that, "would include bands, fashion shows, stand up comedians, and comprable [sic] entertainment to that at other facilities in the area." (*Id.*)

On November 22, 2000, the Luis opened Fantasia for business. (D.I. 8 at ¶ 17.) Despite their representations to government authorities and their neighbors about foregoing the offering of adult entertainment, and despite their concession that, due to the proximity of a church, the law forbade their turning Fantasia into an adult entertainment establishment (D.I. 8 at ¶ 35), the plaintiffs readily admit that Fantasia has, "offered entertainment in the form of female exotic dancers[,]" ever since its opening. (D.I. 16 at ¶ 4.) According to the State, Fantasia "feature[s] partially nude erotic female dancers as the predominant form of entertainment being offered, complete with private rooms for so-called 'lap dances.'" (D.I. 30 at 3.) An investigating police officer described Fantasia's dancers as engaging in a variety of simulated sex acts. (D.I. 60, Dec. 3, 2001 Statement of Probable Cause.)

The plaintiffs admit that they "went forward and opened a bar and restaurant at the ... site, which included ... exotic dancing," but, claiming the literal and figurative coverage of a fig leaf, they add that, "at all points and time, [sic] the genitals of the dancers were fully covered, the areola of the female dancers' breasts were completely covered and the region directly below the top of the areola was specifically covered." (D.I. 8 at ¶ 16.) Plaintiffs describe their dancers' coverings as "brief costumes." (D.I. 16 at ¶ 4.)

In what may be viewed as a concession that the entertainment they offer at Fantasia puts their business squarely within the statutory definition of an "adult entertainment establishment," plaintiffs, through their attorney, applied to County officials in March

of 2002 for a "certification of non-compliance with the requirements of 24 Del. C. § 1610 and the [County Code]."[3] (D.I. 26 at B–1.) In making that application, they acknowledged that criminal charges had been brought against them for operating an adult entertainment establishment without a license and that they were operating within 2,800 feet of a church. (*Id.*) Indeed, by March 11, 2002, when the plaintiffs filed the present action, the State's criminal prosecution against them had been underway since at least the previous December.[4] (*See* D.I. 59, Ex. 1; D.I. 60, Dec. 3, 2001 Statement of Probable Cause.) The State's three-count indictment against the plaintiffs charges them with operating and conspiring to operate an adult entertainment establishment without a license. (*See* D.I. 59, Ex. 1; D.I. 8 at ¶¶ 19–20; D.I. 30 at 7.) That prosecution is still pending. (D.I. 30 at 7; Tr. of Nov. 8, 2002 Oral Arg. at 59–60.) The plaintiffs, to date, continue to operate Fantasia as they have since its opening. (D.I. 16 at ¶ 4.)

## II. *Analysis*

### A. *Plaintiffs' Complaint*

Plaintiffs' Amended Complaint is in four counts, listed as causes of action. Count One alleges that the State laws and County code governing adult entertainment establishments, "as written and as they have been applied" to the plaintiffs, are unconstitutional as a prior restraint upon and suppression of expression protected by the First Amendment of the United States Constitution. (D.I. 8 at ¶ 28.) As relief, plaintiffs seek a declaratory judgment that those laws are unconstitutional, an injunction against the defendants to permanently prevent them from enforcing those laws, monetary damages, and fees and costs.[5] (*Id.* at ¶ 29.)

---

**3.** While it is not clear from the record, it appears that what plaintiffs' counsel described as a "certificate of non-compliance" (D.I. 26 at B–1) may be a Certification of Nonconforming Use, which may be obtained from the County under § 40.08.310 of the Code.

**4.** Also in late March or April of 2002, after filing this suit, Fantasia submitted to the State Commission on Adult Entertainment Establishments (the "Commission") an application, signed by

Lui, for a license to offer adult entertainment at the same site at which it has operated since November of 2000. (D.I. 30, Ex. 2.) Shortly thereafter, in May of 2002, counsel for Fantasia asked the State to withhold any action on Fantasia's application. (*Id.*, Ex. 3.)

**5.** As to the State Defendants, plaintiffs have stipulated to the withdrawal of any claim for damages. (D.I. 50 at ¶ 1.) References hereafter to plaintiffs' claims for damages should be under-

Count Two claims that plaintiffs' rights under the Equal Protection Clause of the Fourteenth Amendment have been violated by the State Defendants and the County because plaintiffs are required to tender a five hundred dollar fee to the County for review of an application for zoning certification and are further required to include the results of the County's zoning review in any application they make to the State for an adult entertainment license. (*Id.* at ¶¶ 32–34.) Plaintiffs complain that the five hundred dollar fee is greatly in excess of the fifty dollar fee typically charged as an application for a zoning certification. (*Id.* at ¶ 34.) They seek essentially the same declaratory and injunctive relief in Count Two as in Count One, and likewise seek damages. (*Id.* at ¶ 37.)

Count Three contains allegations that the State, acting through its Attorney General and police force, have violated David and Jeffrey Lui's constitutional rights to due process and equal protection of the laws by singling them out because "of their heritage, lineage, race and/or color" and prosecuting them under the statute governing adult entertainment establishments. (*Id.* at ¶¶ 39–

41.) As proof that they have been improperly singled out for prosecution, plaintiffs allege that another business, known as "Hak's," is immediately across the street from Fantasia and that "the 'entertainment' offered at Hak's is far more 'risqué' than any exotic dancing provided by the plaintiffs[.]" (*Id.* at ¶¶ 40–41.) Plaintiffs ask the Court to remedy the alleged violation of the Luis' rights by ordering declaratory and injunctive relief to allow the plaintiffs to operate an adult entertainment establishment and prevent the State from continuing its prosecution of the plaintiffs. (*Id.* at ¶ 43.)

In Count Four, the final count, plaintiffs allege that the State's criminal charges against them are the product of unconstitutionally vague and overbroad language in the statutory provisions at issue.[6] (*Id.* at ¶¶ 46–53.) They then ask the Court for a judgment declaring that the State statute is unconstitutional "on over-breadth and vagueness grounds" and unenforceable, and further declaring that the defendants are "equitably estopped from taking any action to prevent plaintiffs from utilizing their premises as an adult entertainment establishment[.]"[7] (*Id.* at ¶ 53.)

---

stood to include plaintiffs' demand for fees and costs as well.

6. Specifically, plaintiffs complain that, although the "brief costumes" of their dancers (D.I. 16 at ¶ 4) "completely cover the human genitals, pubic region and the areola and breast region directly below the top of the areola" (D.I. 8 at ¶ 46), the State is nevertheless prosecuting them under the adult entertainment statute for operating an adult entertainment establishment without a license. (*See* D.I. 59, D.I. 60.) According to the plaintiffs' logic, if the statutory language relied on by the State allows the State's interpretation, then "the statutory enactment is vague." (D.I. 8 at ¶ 48.) Moreover, the plaintiffs complain, the State has charged them with, "having exotic entertainers expose their buttocks region," even though the "buttocks region" is not defined in the statute. (*Id.* at ¶¶ 49–50.) Plaintiffs assert that several public beaches in Delaware would have to be classified as adult entertainment establishments, if the State's interpretation of the statute is permitted, and, hence, the statutory language is overbroad. (*Id.* at ¶ 51.) Lastly, the plaintiffs complain that they are charged with "having exotic dancers erotically touch or fondle their breasts or pubic regions." (*Id.* at ¶ 52.) Since the statute does not define "erotically touching" or "fondling," the plaintiffs assert that it is both vague and overbroad. (*Id.* at ¶ 53.)

7. In addition to the previously noted voluntary withdrawal of their claim for monetary damages (*supra* at 169, n. 5), plaintiffs have also stipulated to the withdrawal of any claim that the restrictions on the location of adult entertainment establishments set forth in 24 Del. C. § 1610(c) and Section 40.03.313 "are not narrowly tailored to serve a substantial government interest; are not rationally related to a valid governmental purpose; are not supported by a reasoned or significant basis; and are not supported by an adequate factual basis." (D.I. 50 at ¶ 2.) Plaintiffs have further stipulated to the withdrawal of any claim "that the requirement in 24 Del. C. § 1610(c) and ... [County] Code Section 40.03.313 that adult uses not be located within 2,800 feet of a church measured in a straight line from property line to property line is unconstitutional because, as applied to the plaintiffs, the restrictions burden more speech than is necessary." (*Id.* at ¶ 3.) The measurement methodology which plaintiffs accede to by this last stipulation appears to be the same methodology that the County's Board of Adjustment applied in affirming the Planning Department's denial of Fantasia's request for a zoning certificate, *Fantasia*, *supra*, 735 A.2d at 428, but not the methodology ultimately adopted by the Superior Court on Fantasia's appeal from the Board's decision. *See id.* at 429 (holding that measurement should be

## B. *The Motions to Dismiss*

The State Defendants and the County both seek dismissal of the plaintiffs' Amended Complaint on various grounds. (*See* D.I. 24, D.I. 29.)[8] Of primary importance are the argument that the principles of comity enunciated by the Supreme Court in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), require this Court to abstain from the exercise of its jurisdiction (*see* D.I. 30 at 7), the conceded argument that the State is immune from damages claims (*id.* at 6; *see supra* at 169, n. 5), and the argument that the County cannot be liable for enforcing a zoning restriction required by State law. (D.I. 38 at 2–3.) The Court agrees with those arguments and, because they are dispositive, will focus primarily on those points.

### 1. *Younger Abstention on Equitable Claims*

In *Younger*, the Supreme Court addressed the propriety of a federal court acting to restrain a pending criminal prosecution in state court. 401 U.S. at 40–41, 91 S.Ct. 746. The Court concluded that such intervention was entirely inappropriate. *Id.* It stated that there is a "national policy forbidding federal courts to stay or enjoin pending state court proceedings except under special circumstances." *Id.* at 41, 91 S.Ct. 746. Without resting its decision on the Anti–Injunction Act, 28 U.S.C. § 2283,[9] which, in earliest form dates to 1793, the Court cited that statute to emphasize the deep, historical roots of a powerful aversion in our Republic to any interference by federal courts in state court proceedings. *See Younger, supra,* 401 U.S. at 43, 91 S.Ct. 746. The Court noted that the basic policy reasons behind that aversion are two fold. "One is the basic doctrine of equity jurisprudence that courts of equity should not act, and particularly not act to restrain a criminal prosecution, when the moving party has an adequate remedy at law and will not suffer irreparable harm if denied equitable relief." *Id.* at 43–44, 91 S.Ct. 746. The second reason, and the one given the greatest emphasis by the Court, is

> an even more vital consideration, the notion of 'comity,' that is a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways.

*Id.* at 44, 91 S.Ct. 746. The Court concluded that the district court should have abstained from exercising its jurisdiction and allowed the state prosecution to proceed. *See id.* at 41, 54, 91 S.Ct. 746.

This foundational respect for what the Court called "Our Federalism" has been reaffirmed repeatedly in later decisions. *See, e.g., Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423, 431, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982) (*Younger* abstention based upon "a strong federal policy against federal court interference with pending state judicial proceedings absent extraordinary circumstances"); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994, (1979) ("'Only if "extraordinary circumstances" render the state court incapable of fairly and fully adjudicating the federal issues before it, can there be any relaxation of the deference to be accorded to the state criminal process.'")(quoting *Kugler v. Helfant*, 421 U.S. 117, 124, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975)). It is, it seems, a princi-

---

"from the building containing the adult use to the property containing the protected use").

8. Each of the pending motions is a summary judgment motion in name or in effect, since the defendants' motions to dismiss under Federal Rule of Procedure 12(b)(6) and the plaintiffs' response present material outside the pleadings for consideration by the Court. *See Fed.R.Civ.P.* 12(b)(6) ("[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are pre-

sented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 . . . .").

9. A year after issuing its decision in *Younger*, the Court emphasized that it had "carefully eschewed any reliance on the [anti-injunction] statute" in *Younger*, and that it had based its decision instead upon the fundamental principle of federal-state comity. *Mitchum v. Foster*, 407 U.S. 225, 230, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972).

ple of judicial restraint that bears frequent recollection and studious attention.

■ The Third Circuit, following Supreme Court precedent, has noted that "abstention under *Younger* is appropriate only where: (1) there are ongoing state proceedings that are judicial in nature; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise the federal claims." *Gwynedd Properties, Inc. v. Lower Gwynedd Township,* 970 F.2d 1195, 1200 (3d Cir.1992) (citing *Middlesex County Ethics Comm., supra,* 457 U.S. at 432, 102 S.Ct. 2515). In the case at bar, each part of that test is clearly met.

■ First, it is undisputed that the plaintiffs are defendants in a pending criminal prosecution in the Superior Court of the State of Delaware. (*See* D.I. 8 at ¶¶ 19–20; D.I. 30 at 7; Tr. of 11/8/02 Oral Arg. at 59–60.) That prosecution began before the institution of this litigation (*see supra* at 169), and it is not the plaintiffs' first trip through the state judicial system in their battle against the laws governing adult entertainment in Delaware. *See Fantasia, supra,* 735 A.2d 424 (Del.Super.1998).

Second, there is likewise no question that the State's prosecution implicates important governmental interests. Speaking in the context of a constitutional challenge to a city's effort to control through zoning the negative effects of adult entertainment establishments, the Supreme Court characterized such negative effects as "serious problems" and noted that the governmental interest "in attempting to preserve the quality of ... life [in a community] is one that must be accorded high respect." *Young v. American Mini Theatres, Inc.,* 427 U.S. 50, 71, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). In a similar zoning case last year, the Court again observed that its precedents support ordinances aimed "at the secondary effects of [adult] theaters on the surrounding community, namely at crime rates, property values, and the quality of the city's neighborhoods" as serving a substantial government interest. *City of Los Angeles v. Alameda Books, Inc.,* 535 U.S. 425, 122 S.Ct. 1728, 1734, 152 L.Ed.2d 670 (2002).

The Delaware General Assembly, in passing the law that the plaintiffs now challenge, made a specific finding that, "the health, safety and welfare of the people of the State are imperiled by the increasing incidence of the crimes of obscenity, prostitution and of offenses related thereto ... [and] that the foregoing crimes are principally facilitated by the widespread abuse of ... adult entertainment establishments." 24 Del. C. § 1601(a). Significantly, the plaintiffs themselves have conceded by formal stipulation that the State's and the County's legal restrictions on adult entertainment are narrowly tailored to serve a substantial government interest, are rationally related to a valid governmental purpose, and are supported by reasoned and significant bases, including an adequate factual basis. (*See* D.I. 50 at ¶ 2.)

On the third and final point, whether the state proceedings afford an adequate opportunity to raise the federal claims, the plaintiffs do not argue that they lack that opportunity. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 14, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) ("[T]he burden on this point rests on the ... plaintiff to show that state procedural law barred presentation of [its] claims."); *Anthony v. Council,* 316 F.3d 412, 421–22 (3d Cir.2003) (same). Nor could any credible argument be made to that effect, at least as to the claims for equitable relief, since the plaintiffs have already filed in the State criminal case a motion to dismiss the indictment, challenging the constitutionality of the State's adult entertainment statute in much the same manner as they do in the case at bar. (*See* D.I. 59: D.I. 60 and attachments.) The equitable claims clearly embody questions of law which can be and, in some measure, have been raised in the State court. *See Delaware Superior Court Rule of Criminal Proc.* 12(b) ("Any defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion."); *cf. Hughes v. State,* 653 A.2d 241, 247 (Del.1994) (decision upholding defendant's Fourteenth Amendment challenge to prosecution under recently amended state law).

Delaware's Supreme Court has directed that, when enforcing Delaware's statute on

adult entertainment establishments, courts should "construe the legislative intent so as to avoid unnecessary constitutional infirmities." *Richardson v. Wile*, 535 A.2d 1346, 1350 (Del.1988). The court in *Richardson* plainly noted its concern that the statute could be interpreted too broadly and instructed interpreting courts to avoid that problem. *Id.* ("[T]o preserve its constitutionality, enforcement of the statute must be limited to the furtherance of the stated purpose [of limiting criminal secondary effects of adult entertainment establishments].") It can hardly be said, then, that Delaware's courts are not attuned to the type of arguments that plaintiffs are raising here.[10] That plaintiffs have the opportunity to raise those arguments in the state prosecution is sufficient to make abstention under *Younger* appropriate as to the claims for equitable relief.[11] *Moore v. Sims*, 442 U.S. 415, 430 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

### 2. Dismissal of Damages Claims Against the State Defendants and, on Count One, Partial Summary Judgment for the County on Liability for Damages

Having concluded that the Court should not exercise its jurisdiction over the claims for equitable relief, the question remains whether the present action should be stayed, dismissed or otherwise decided on the damages claims. Even when the *Younger* doctrine requires abstention, a district court "has no discretion to dismiss rather than to stay claims for monetary relief that cannot be redressed in the state proceeding." *Deakins v. Monaghan*, 484 U.S. 193, 202, 108 S.Ct. 523, 98 L.Ed.2d 529 (1988). That rule, however, is premised on the proposition that the damages claims are cognizable in the district court in the first instance. *See id.* (stay rather than dismissal is appropriate because "[i]t allows a parallel state proceeding to go forward without interference from its federal sibling, while enforcing the duty of federal courts 'to assume jurisdiction *where jurisdiction properly exists.*' ")(emphasis added). In this case, the claims for monetary relief are not cognizable against the State Defendants, because they enjoy sovereign immunity to such claims. Similarly, with respect to the first count of the Amended Complaint, the County, under the admitted facts and law, may be immune and, in any event, cannot be liable for enforcing the 2,800 foot restriction on the location of adult entertainment establishments.

The State Defendants' claim to immunity has already been conceded by the plaintiffs (*see supra* at 169, n. 5; D.I. 50 at ¶ 1), as it had to be, since the law on this point is plain. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985): *Melo v. Hafer*, 912 F.2d 628, 635 (3d Cir. 1990), *aff'd*, 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991); *Smith v. Town of Dewey Beach*, 659 F.Supp. 752, 754–56 (D.Del.1987). The Eleventh Amendment to the Constitution [12] "has been interpreted to bar suits for

---

10. This Court need not determine whether the claims would technically constitute a "defense" in the state proceedings. "There is no magic in the word 'defense' when used in connection with the *Younger* doctrine ...." *Moore v. Sims*, 442 U.S. 415, 430 n. 12, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

11. There are certain "well-established circumstances where the federal court need not stay its hand in the face of pending state proceedings," *Moore, supra*, 442 U.S. at 424, 99 S.Ct. 2371, but it is plain that this case does not present them. There is nothing in the record from which one could conclude that "the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is 'flagrantly and patently violative of express constitutional prohibitions ....' " *Id.* (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975) (internal quotes

omitted)). To the contrary, the statute and code provision at issue have been upheld when previously challenged on constitutional grounds, *see Mitchell v. Comm'n on Adult Entertainment Establishments*, 10 F.3d 123, 128 (3d Cir.1993); *Amico v. New Castle County*, 101 F.R.D. 472 (D.Del.1984), *aff'd*, 770 F.2d 1066 (3d Cir.1985), and the record demonstrates that the State and County officials in this case were motivated simply by a good faith effort to enforce the law. In fact, they made extra efforts to accommodate the plaintiffs, seeking and obtaining assurances from them so that Fantasia could open for business, despite lingering reservations about the plaintiffs' *bona fides*. (*See supra* at 168.)

12. The Eleventh Amendment provides, "The Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the

monetary damages by private parties in federal court against a state or against state agencies. It also bars a suit against state officials in their official capacity, because the state is the real party in interest inasmuch as the plaintiff seeks recovery from the state treasury." *Melo, supra,* 912 F.2d at 635. While the law is less straightforward as to the County's immunity under these circumstances, the damages claim against the County asserted in Count One of the Amended Complaint cannot stand, since the County cannot be liable when it is enforcing a policy mandated by the State.

### a. *County Immunity*

■ As to whether the County enjoys immunity under the Eleventh Amendment, the question "turns on whether [the County] is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity, or is instead to be treated as a ... political subdivision to which the Eleventh Amendment does not extend." *Mount Healthy City School Dist. Board of Education v. Doyle,* 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). Typically, in determining whether an agency or political subdivision of a state is acting as an arm of the state, three factors are considered: "(1) [w]hether the money that would pay for the judgment would come from the state ...; (2)[t]he status of the [government entity] under state law ...; and (3)[w]hat degree of autonomy the [entity] has." *Callahan v. City of Philadelphia,* 207 F.3d 668, 670 (3d Cir. 2000) (citing *Fitchik v. New Jersey Transit Rail Operations, Inc.,* 873 F.2d 655 (3d Cir. 1989(en banc))).

The parties have not directly addressed these so-called *Fitchik* factors.[13] The Court therefore cannot adequately address the first point, which, in the context of determining Eleventh Amendment immunity, is the most important. *See Callahan, supra,* 207 F.3d at 670. There is no record before the Court on whether an award of damages would be paid by the State or the County or somehow divided between the two. Pertinent to the second factor, the status of the County under Delaware law, however, the County has provided authority (*see* D.I. 38 at 3–4) demonstrating that the power exercised by the County in adopting zoning ordinances is not its own but is, rather, delegated by the State. *See New Castle County Council v. BC Development Associates,* 567 A.2d 1271, 1275 (Del. 1989) (citing Del. Const. Art. II and 9 Del. C. § 2601). The Delaware Supreme Court has observed that, when the County considers a zoning ordinance, its status is "analogous to that of an administrative agency, since the fundamental power to regulate land use rests with the [Delaware] General Assembly." *Id.* Under Delaware constitutional, statutory, and decisional law, the County acts only as an agency of the State in exercising its zoning authority.

That the State remains firmly in control of land use policy is also the answer to the third factor in the *Fitchik* immunity test, which asks about the degree of autonomy exercised by the County. In enforcing the 2,800 foot restriction which is central to the plaintiffs' claims, it is abundantly clear that the County has no autonomy whatsoever. The 2,800 foot restriction is precisely the same in both the State statute, 24 Del. C. § 1610(c), and the County code, Section 40.03.313 (reproduced at D.I. 26 at B–136). While the County was the first to adopt the restriction, the State has since made it an explicit mandate, binding on all counties and municipalities in Delaware. *See* 24 Del. C. § 1610(d) ("[N]o municipal corporation or county may adopt any ordinance or charter amendment with distance restrictions less than those provided ....."). The County simply has no alternative but to maintain and enforce the State's policy in this regard. It would be a strange and unfair result, then, to hold that the State is immune from suit for imposing the 2,800 foot restriction but to simultaneously allow the County to be sued for following a State mandate that requires the same restriction.

United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

**13.** Both the State Defendants (D.I. 9 at ¶ 54) and the County (D.I. 18 at ¶¶ 54–55) have pleaded immunity as affirmative defenses, although the County did not cite the Eleventh Amendment as a basis for its claim to immunity until the argument in its Reply Brief in Support of Its Motion to Dismiss. (D.I. 38 at 1–7.)

*Cf. Coleman v. Kaye,* 87 F.3d 1491, 1499 (3d Cir.1996), *cert. denied,* 519 U.S. 1084, 117 S.Ct. 754, 136 L.Ed.2d 691 (1997) ("It is well established that when county prosecutors execute their sworn duties to enforce the law ..., they act as agents of the State.").

Though the foregoing conclusion seems compelling, the law is unsettled on whether an agency or political subdivision may enjoy Eleventh Amendment immunity for purposes of dealing with a specific issue. *See Carter v. City of Philadelphia,* 181 F.3d 339, 351 n. 38 (3d Cir.1999), *cert. denied,* 528 U.S. 1005, 120 S.Ct. 499, 145 L.Ed.2d 385 (1999) (noting that the Supreme Court has reserved decision on " 'whether there may be some state instrumentalities that qualify as "arms of the State" for some purposes but not others.' ") (quoting *Regents of the Univ. of Cal. v. Doe,* 519 U.S. 425, 427 n. 2, 117 S.Ct. 900, 137 L.Ed.2d 55 (1997)). Nevertheless, based on the foregoing analysis of the County's attenuated role with respect to the 2,800 foot restriction, the County should be immune from suit for maintaining and enforcing that restriction.

Reasoning by analogy from the Eleventh Amendment benefits given under certain circumstances to local agencies, such as district attorneys' offices, serves to buttress that conclusion. After reviewing federal cases from throughout the United States regarding Eleventh Amendment immunity for local prosecutors, the Third Circuit observed that "[t]he recurring theme that emerges from these cases is that county or municipal law enforcement officials may be State officials when they carry out policies established by the State but serve as local policy makers when they manage or administer their own offices." *Carter, supra.* 181 F.3d at 352. If it is true that county officials can, on an issue-specific basis, be agents of the state and enjoy the benefits of the Eleventh Amendment, then it should be equally true of a county itself, which acts only through those same officials,[14] and which, in a case such as this, is doing nothing more nor less than that which it is required to do by the State.

### b. *County Liability*

■ The Court need not decide the immunity issue, however, since it is clear that, even if the County is not immune, it cannot be liable for damages under Count One. Liability and immunity are distinct issues. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) ("[P]rotection against liability [under § 1983] does not encompass immunity from suit."). Unlike the law on immunity, the law on § 1983 liability under circumstances like those presented here is well defined. "[T]he language of § 1983 ... compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dept. of Social Services,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). In other words, as the Third Circuit has stated, "when a county is merely enforcing state law, without adopting any particular policy of its own, it cannot be held liable ...." *Doby v. DeCrescenzo,* 171 F.3d 858 (3d Cir.1999) (*citing with approval Surplus Store and Exch., Inc. v. City of Delphi,* 928 F.2d 788, 790–92 (7th Cir.1991)); *see also Leatherman, supra,* 507 U.S. at 166, 113 S.Ct. 1160 ("In short, a municipality cannot be held liable unless a municipal policy or custom caused the constitutional injury.").

---

**14.** While it is true that the Supreme Court has rejected the argument that local governments should enjoy the same type of qualified immunity from suit that government officials enjoy when they act in good faith, *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* · 507 U.S. 163, 166, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993), the logic of that ruling does not undermine the foregoing analysis of Eleventh Amendment immunity. Qualified immunity rests upon the balancing of policy considerations separate and apart from the constitutional grounding of immunity under the Eleventh Amendment. *Cf. Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987) (noting that Supreme Court cases "have accommodated ... conflicting [policy] concerns by generally providing government officials performing discretionary functions with a qualified immunity"). Indeed, as already noted, the possibility that Eleventh Amendment immunity may extend to a local government entity on an issue-specific basis has not been ruled out by either the Supreme Court or the Third Circuit. (*See supra* at 174–75.)

It manifestly is not the County's policy that has caused the constitutional injury alleged in Count One of the Amended Complaint. As has been emphasized, *supra* at 174–75, it is the State mandated 2,800 foot restriction that lies at the heart of the plaintiffs' allegations in Count One. While it is true that the County has also adopted that restriction, it could not, under current law, do otherwise. That policy is, in every meaningful sense, an obligation imposed by the State, and viewing it as such requires the conclusion that the County cannot be liable for enforcing it.[15] Summary judgment for the County on the damages portion of Count One is therefore appropriate.

### 3. *Stay of Damages Claim Against County in Count Two*

Finally, the Court must address the plaintiffs' claim for damages in Count Two of the Amended Complaint. While much of that count is repetitive of Count One, there does appear to be one significant distinction. The plaintiffs assert in Count Two that the County requires them to tender a five hundred dollar fee to obtain a review of an application for zoning certification and that such a fee is greatly in excess of the fifty dollar fee typically charged as an application for a zoning certification. (D.I. 8 at ¶¶ 32–34.) In plaintiffs' view, it seems, the alleged fee differential represents a violation of their rights under the Equal Protection Clause of the Fourteenth Amendment. (*See id.* at ¶ 37.) The parties have not focused on this issue and, on the record before the Court, a meaningful analysis is not possible. Accordingly, the appropriate step is to stay further consideration of that claim until after the State's prosecution of the plaintiffs has concluded, at which time the parties and the Court will return to the issue, if necessary.

### III. *Conclusion*

For the foregoing reasons, the Court will dismiss without prejudice the plaintiffs' eq-

uitable claims against the defendants, will dismiss with prejudice the plaintiffs' damages claims against the State Defendants, will enter partial summary judgment for the County on the plaintiffs' claim for monetary damages on Count One of the Amended Complaint, and will stay further consideration of the damages claim against the County on Count Two of the Amended Complaint. No allegations have been made against the County for the constitutional violations asserted in Counts Three and Four of the Amended Complaint. Thus, the final result of these rulings by the Court is that only the damages claim against the County asserted in Count Two remains in the case, and consideration of that claim is stayed until the conclusion of the State's criminal prosecution of the plaintiffs. An appropriate order will issue.

---

**15.** As noted, the primary foundation for that conclusion is the lack of autonomy in the County's adoption and enforcement of the 2,800 foot restriction. Applying the third *Fitchik* factor to this case leads to the same conclusion. *Supra* at 174–75. Likewise, the outcome of applying the second *Fitchik* factor also indicates that there is no liability on the County's part. (*See, supra* at 174–75.) *Cf. Callahan. supra,* 207 F.3d at 670 (applying *Fitchik* factors to analysis of liability under § 1983).